## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| ALAN SCHELHAS, Individually and for Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| HACKENSACK MERIDIAN HEALTH, INC. | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    Alan Schelhas (Schelhas) brings this class and collective action to recover unpaid wages and other damages from Hackensack Meridian Health, Inc. (HMH).

2.    Schelhas worked for HMH as a Patient Care Technician (PCT) in New Jersey.

3.    Like the Putative Class Members (as defined below), Schelhas regularly worked more than 40 hours in a workweek.

4.    But HMH does not pay them for all the hours they work.

5.    Instead, HMH automatically deducts 30 minutes a day from these employees' work time for so-called meal breaks.

6.    Schelhas and the Putative Class Members are thus not paid for that time.

7.    But HMH fails to provide Schelhas and the Putative Class Members with *bona fide* meal breaks.

8.    Instead, HMH requires Schelhas and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

9.    HMH's auto-deduction policy violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.* (NJWHL), and the New Jersey Wage Theft Act, N.J.S.A. 34:11-4.1, *et seq.* (NJWTA) by depriving Schelhas and the Putative Class Members of wages, including premium overtime wages for all hours worked, including those worked in excess of 40 hours in a workweek.

10.    Further, in addition to excluding time Schelhas and the Putative Class Members worked during their unpaid "meal breaks," HMH also paid these employees different hourly rates (or "shift differentials") and/or bonuses depending on what type of shifts they worked.

11.    But HMH failed to include these shift differentials and bonuses in calculating Schelhas's and the Putative Class Members' regular rates of pay for overtime purposes.

12.    HMH's shift differential and bonus pay scheme violates the FLSA, NJWHL, and NJWTA by depriving Schelhas and the Putative Class Members of

overtime compensation at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

## JURISDICTION & VENUE

13.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.    The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.    This Court has general personal jurisdiction over HMH because HMH is a domestic non-profit corporation that maintains its principal place of business and headquarters in Edison, New Jersey.

16.    Venue is proper because HMH maintains its headquarters in Edison, New Jersey, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

17.    Schelhas worked for HMH as a PCT in Hackensack, New Jersey from approximately May 2014 until November 2022.

18.    Throughout his employment, HMH classified Schelhas as non-exempt and paid him on an hourly basis.

19.    Throughout his employment, HMH subjected Schelhas to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

20.    But Schelhas never received *bona fide* meal breaks.

21.    Further, throughout his employment, HMH paid Schelhas under its shift differential and bonus pay scheme, paying him different hourly rates and/or bonuses depending on what type of shift he worked.

22.    But HMH failed to include these shift differentials and bonuses in calculating Schelhas's regular rate of pay for overtime purposes.

23.    Schelhas's written consent is attached as **Exhibit 1**.

24.    Schelhas brings this action on behalf of himself and other similarly situated hourly, non-exempt HMH employees who (1) were subject to HMH's automatic meal break deduction policy and/or (2) were paid under HMH's shift differential and bonus pay scheme.

25.    HMH automatically deducts 30 minutes/shift from these employees' recorded work time for so-called "meal breaks."

26.    But HMH uniformly requires these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

27.    Further, HMH uniformly pays these employees shift differentials and/or bonuses that HMH fails to include in calculating their regular rates of pay for overtime purposes.

28.    Thus, HMH uniformly deprives these employees of wages (including overtime compensation at the proper premium rate based on *all* renumeration received) for all hours worked, including those worked in excess of 40 hours in a workweek, in violation of the FLSA, NJWHL, and/or NJWTA.

29.    The FLSA Collectives of similarly situated employees are defined as:

> **All hourly, non-exempt HMH employees who received an automatic meal period deduction at any time during the past 3 years ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective"); and**

> **All hourly, non-exempt HMH employees who received shift differentials and/or bonuses at any time during the past 3 years ("FLSA Shift Diff Collective Members" or "FLSA Shift Diff Collective").**

30.    The FLSA Meal Break Collective Members and the FLSA Shift Diff Collective Members are collectively referred to as the "FLSA Collective Members" or "FLSA Collectives."

31.    Schelhas also seeks to represent such classes under the NJWHL and NJWTA pursuant to FED. R. CIV. P. 23.

32.    The New Jersey Classes of similarly situated employees are defined as:

> **All hourly, non-exempt HMH employees who received an automatic meal period deduction while working in**

**New Jersey at any time during the past 6 years ("New Jersey Meal Break Class Members" or "New Jersey Meal Break Class"); and**

**All hourly, non-exempt HMH employees who received shift differentials and/or bonuses while working in New Jersey at any time during the past 6 years ("New Jersey Shift Diff Class Members" or "New Jersey Shift Diff Class").**

33.    The New Jersey Meal Break Class Members and the New Jersey Shift Diff Class Members are collectively referred to as the "New Jersey Class Members" or "New Jersey Classes."

34.    The FLSA Collective Members and New Jersey Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

35.    HMH is a New Jersey not-for-profit corporation that maintains its headquarters in Edison, New Jersey.

36.    HMH may be served with process by serving its president, officers, directors, managing agents, or general agents at **343 Thornall Street, Floor 8, Edison, New Jersey 08837**.

## COVERAGE UNDER THE FLSA

37.    At all relevant times, HMH was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38.    At all relevant times, HMH, as a hospital network and institution primarily engaged in healthcare, was an enterprise within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

39.    At all relevant times, HMH was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because HMH, as a hospital network, is engaged in the operation of a hospital and an institution primarily engaged in providing healthcare services.

40.    At all relevant times, HMH has had an annual gross volume of sales made, or business done, of not less than $500,000 each year.

41.    At all relevant times, HMH has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as medical tools, personal protective equipment, computers, and cell phones.

42.    At all relevant times, Schelhas and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

43.    HMH uniformly deducted 30 minutes/shift from Schelhas's and the FLSA Collective Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

44.    As a result, HMH failed to pay Schelhas and the FLSA Collective Members for this compensable work, including overtime wages, in violation of the FLSA.

45.    HMH's automatic meal break deduction policy, which deprives Schelhas and the FLSA Collective Members of overtime compensation for all overtime hours worked during the weeks in which these employees work over 40 hours, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

46.    Further, HMH uniformly paid Schelhas and the FLSA Collective Members shift differentials and bonuses that it failed to include in calculating these employees' regular rates of pay for overtime purposes.

47.    As a result, HMH failed to pay Schelhas and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

48.    HMH's shift differential and bonus pay scheme, which deprives Schelhas and the FLSA Collective Members of overtime compensation at the proper premium rate, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

49.    HMH bills itself as "the largest, most comprehensive and truly integrated health care network in New Jersey … comprise[d] [of] 17 hospitals from Bergen to Ocean counties[.]"[1]

50.    HMH employs patient care workers, including Schelhas and the Putative Class Members, to work at its various healthcare facilities.

51.    HMH uniformly classifies these employees as non-exempt and pays them on an hourly basis.

52.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

53.    For example, Schelhas worked for HMH as a PCT in Hackensack, New Jersey from approximately May 2014 until November 2022.

54.    As a PCT, Schelhas's primary responsibilities include providing patient care to HMH patients in the emergency room, such as completing patient intakes, checking vitals, running IV, drawing blood for testing, transporting patients between hospital rooms, and assisting doctors and other patient care staff with providing healthcare services and treatments.

_____

[1] https://www.hackensackmeridianhealth.org/en/about-us (last visited May 3, 2023).

55.    Throughout his employment, HMH classified Schelhas as non-exempt and paid him on an hourly basis.

56.    Throughout his employment, HMH subjected Schelhas to its common practice of automatically deducting 30 minutes from his recorded hours worked and wages each shift for meal breaks, regardless of whether he actually received a *bona fide* meal break.

57.    Throughout his employment, HMH paid Schelhas differently hourly rates ("shift differentials") and/or bonuses depending on what type of shift he worked, but HMH failed to include these shift differential and bonuses in calculating Schelhas's regular rate of pay for overtime purposes.

58.    Schelhas and the Putative Class Members performed their jobs under HMH's supervision, and using materials, equipment, and technology approved and supplied by HMH.

59.    HMH requires Schelhas and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

60.    At the end of each pay period, Schelhas and the Putative Class Members received wages from HMH that were determined by common systems and methods that HMH selected and controlled.

61.    HMH requires its hourly, non-exempt employees, including Schelhas and the Putative Class Members, to record their hours worked using HMH's timeclock system.

62.    Further, HMH subjects its hourly, non-exempt employees, including Schelhas and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

63.    Specifically, HMH automatically deducts 30 minutes from Schelhas's and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

64.    But HMH fails to provide Schelhas and the Putative Class Members with *bona fide* meal periods.

65.    Instead, HMH requires Schelhas and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

66.    This unpaid time is compensable under the FLSA and NJWHL because HMH knew, or should have known, that (1) Schelhas and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal

period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 consecutive minutes.

67.    The unpaid time is also compensable under the NJWTA because HMH agreed to pay Schelhas and the New Jersey Class Members set rates of pay for all time they worked, and HMH failed to pay these employees all their earned wages for all hours worked.

68.    HMH failed to exercise its duty to ensure Schelhas and the Putative Class Members were not performing work that HMH did not want performed during their unpaid "meal breaks."

69.    Despite accepting the benefits, HMH did not pay Schelhas and the Putative Class Members for the compensable work they performed during their "meal breaks."

70.    HMH knows Schelhas and the Putative Class Members routinely perform work "off the clock" during their unpaid "meal breaks" because HMH expects and requires these employees to do so.

71.    But HMH does not pay Schelhas and the Putative Class Members for this routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA, NJWHL, and/or NJWTA.

72.    Thus, under HMH's uniform automatic meal break deduction policy, Schelhas and the Putative Class Members are denied overtime pay for those on-duty

"meal breaks" in workweeks in which they work in excess of 40 hours in violation of the FLSA, NJWHL, and NJWTA.

73.    Likewise, under HMH's uniform automatic meal break deduction policy, Schelhas and the New Jersey Class Members are denied "straight time" pay for those on-duty "meal breaks" in workweeks in which they work fewer than 40 hours in violation of the NJWTA.

74.    Similarly, HMH also subjects Schelhas and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 15-minute increment for HMH's – not these employees' – primary benefit.

75.    HMH's uniform rounding policy violates the FLSA, NJWHL, and NJWTA by depriving Schelhas and the Putative Class Members of overtime pay for all overtime hours worked because HMH fails to include all work time in these employees' total hours worked.

76.    Likewise, HMH's uniform rounding policy violates the NJWTA by depriving Schelhas and the New Jersey Class Members of "straight time" pay (at their agreed hourly rates) for all hours worked up to 40 hours in a workweek because HMH fails to include all work time in these employees' total hours worked.

77.     Finally, in addition to excluding time Schelhas and the Putative Class Members worked, HMH also paid these employees different hourly rates ("shift differentials") and/or bonuses depending on what type of shifts they worked.

78.     But HMH failed to include these shift differentials and bonuses in calculating Schelhas's and the Putative Class Members' regular rates of pay for overtime purposes.

79.     HMH's shift differential pay scheme violates the FLSA, NJWHL, and NJWTA by failing to pay Schelhas and the Putative Class Members overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

80.     Schelhas worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

81.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

82.     Indeed, HMH typically schedules Schelhas and the Putative Class Members to work 8- to 12-hour shifts for up to 6 days a week.

83.     And Schelhas and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" to complete their job duties and responsibilities.

- 14 -

84.    As a result, Schelhas and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

85.    When Schelhas and the Putative Class Members worked more than 40 hours in a workweek, HMH did not pay them overtime wages at 1.5 times their regular hourly rate – based on *all* renumeration received – for all overtime hours worked because (1) HMH failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek and/or (2) HMH failed to include these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

86.    Likewise, when Schelhas and the New Jersey Class Members worked fewer than 40 hours in a workweek, HMH did not pay them "straight time" pay (at their agreed hourly rates) for all hours worked because (1) HMH failed to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek, and/or (2) HMH failed to include these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

87.    HMH knew, or should have known, it was subject to the FLSA, NJWHL, and NJWTA, including their respective overtime provisions.

88.    HMH knew, or should have known, the FLSA, NJWHL, and NJWTA require it to pay employees, including Schelhas and the Putative Class Members,

overtime compensation at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

89.    HMH knew, or should have known, the NJWTA requires it to timely pay employees, including Schelhas and the Putative Class Members, all wages due, at the rates for which these workers are employed, for all hours worked.

90.    HMH knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA, NJWHL, and NJWTA.

91.    HMH knew, or should have known, Schelhas and the Putative Class Members regularly worked during their unpaid "meal breaks" because HMH expected and required them to do so.

92.    Nonetheless, HMH failed to timely pay Schelhas and the Putative Class Members wages, including overtime wages at the proper premium rate, for all hours worked, including those worked in excess of 40 hours in a workweek, which is in willful violation of the FLSA, NJWHL, and NJWTA.

93.    Likewise, HMH failed to pay Schelhas and the New Jersey Class Members all their wages earned at the rates HMH agreed to pay them for all hours of work they performed.

94.    HMH knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Schelhas and the Putative Class Members of pay, including overtime compensation at the proper premium rate, for all hours worked, including those worked in excess of 40 hours in a week, in violation of the FLSA, NJWHL, and/or NJWTA.

95.    HMH's failure to pay Schelhas and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

96.    HMH's failure to pay Schelhas and the New Jersey Class Members all wages earned at the rates HMH agreed to pay them was neither reasonable., nor was the decision not to pay these employees all wages earned at the rates HMH agreed to pay them made in good faith.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

97.    Schelhas brings his claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

98.    The Putative Class Members were uniformly victimized by (1) HMH's automatic meal break deduction policy and/or (2) HMH's shift differential and bonus pay scheme, which are in willful violation of the FLSA, NJWHL, and NJWTA.

- 17 -

99.     Other Putative Class Members worked with Schelhas and indicated they were paid in the same manner, performed similar work, and were subject to HMH's same illegal pay policies.

100.    Based on his experiences with HMH, Schelhas is aware HMH's illegal practices were imposed on the Putative Class Members.

101.    The Putative Class Members are similarly situated in all relevant respects.

102.    Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime pay.

103.    Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

104.    Rather, the Putative Classes are held together by (1) HMH's automatic meal break deduction policy and/or (2) HMH's shift differential and bonus pay scheme, both of which systematically deprived Schelhas and the Putative Class Members of proper wages, including overtime pay.

105.    The New Jersey Class Members are similarly denied "straight time" wages (at their agreed hourly rates) when they worked fewer than 40 hours in a workweek.

106.   The Putative Class Members are similarly denied overtime wages at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

107.   The back wages owed to Schelhas and the Putative Class Members will be calculated using the same records and using the same formula.

108.   Schelhas's experiences are therefore typical of the experiences of the Putative Class Members.

109.   Schelhas has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

110.   Like each Putative Class Member, Schelhas has an interest in obtaining the unpaid wages owed under federal and/or state law.

111.   A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

112.   Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and HMH will reap the unjust benefits of violating the FLSA, NJWHL, and NJWTA.

113.   Further, even if some of the Putative Class Members could afford individual litigation against HMH, it would be unduly burdensome to the judicial system.

114.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

115.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

116.    Among the common questions of law and fact are:

a.    Whether HMH engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, NJWHL, and NJWTA;

b.    Whether HMH's automatic meal break deduction policy deprived Schelhas and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, NJWHL, and NJWTA;

c.    Whether HMH failed to pay Schelhas and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA, NJWHL, and NJWTA;

d.      Whether HMH failed to pay Schelhas and the New Jersey Class Members all wages earned at their agreed rates for all hours worked in violation of the NJWTA;

e.      Whether HMH knew, or had reason to know, Schelhas and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA, NJWHL, and NJWTA;

f.      Whether HMH failed to include Schelhas and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA, NJWHL, and NJWTA;

g.      Whether HMH's violations of the FLSA, NJWHL, and/or NJWTA resulted from a continuing course of conduct;

h.      Whether HMH's decision not to timely pay Schelhas and the Putative Class Members overtime wages at the proper rate for all overtime hours worked was made in good faith;

i.      Whether HMH's decision not to pay Schelhas and the New Jersey Class Members all wages earned for all hours worked was made in good faith; and

j.     Whether HMH's violations of the FLSA, NJWHL, and/or NJWTA were willful.

117.   Schelhas and the Putative Class Members sustained damages arising out of HMH's illegal and uniform employment policies.

118.   Schelhas knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

119.   Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to HMH's records, and there is no detraction from the common nucleus of liability facts.

120.   Therefore, the issue of damages does not preclude class or collective treatment.

121.   HMH is liable under the NJWTA for failing to pay Schelhas and the New Jersey Class Members "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

122.   HMH is liable under the FLSA, NJWHL, and NJWTA for failing to timely pay Schelhas and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they worked more than 40 hours in a workweek.

123.   Consistent with HMH's illegal automatic meal break deduction policy, Schelhas and the New Jersey Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

124.   Consistent with HMH's illegal automatic meal break deduction policy, Schelhas and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

125.   Consistent with HMH's illegal shift differential and bonus pay scheme, Schelhas and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

126.   As part of its regular business practices, HMH intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, NJWHL, and NJWTA with respect to Schelhas and the Putative Class Members.

127.   HMH's illegal policies deprived Schelhas and the Putative Class Members of wages, including overtime compensation at the proper premium rate, which they are owed under federal and/or state law.

128.   There are many similarly situated FLSA Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

129.   This notice should be sent to the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

130.   Those similarly situated employees are known to HMH, are readily identifiable, and can be located through HMH's business and personnel records.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVES)

131.   Schelhas realleges and incorporates all other paragraphs by reference.

132.   Schelhas brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

133.   HMH violated, and is violating, the FLSA by failing to pay Schelhas and the FLSA Collective Members overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

134.   Schelhas and the FLSA Collective Members have been harmed as a direct and proximate result of HMH's unlawful conduct because they have been deprived of wages owed for work that they performed and from which HMH derived a direct and substantial benefit.

135.   HMH knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Schelhas and the FLSA Collective

Members overtime compensation at the proper premium rate for all overtime hours worked.

136.    HMH's failure to pay Schelhas and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

137.    Accordingly, Schelhas and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE NJWHL
### (NEW JERSEY CLASSES ONLY)

138.    Schelhas realleges and incorporates all other paragraphs by reference.

139.    Schelhas brings his NJWHL claims as a class action on behalf of himself and the New Jersey Class Members pursuant to FED. R. CIV. P. 23.

140.    The conduct alleged violates the NJWHL, N.J.S.A. 34:11-56a, *et seq*.

141.    At all relevant times, HMH was an "employer" within the meaning of, and subject to the requirements of, the NJWHL. *See* N.J.S.A. 34:11-56a1(g).

142.  At all relevant times, HMH employed Schelhas and the New Jersey Class Members as "employees" within the meaning of the NJWHL. *See* N.J.S.A. 34:11-56a1(h).

143.  Section 34:11-56a4 of the NJWHL requires employers, like HMH, to pay employees, like Schelhas and the New Jersey Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek. *See* N.J.S.A. 34:11-56a4(b)(1).

144.  Schelhas and the New Jersey Class Member are entitled to overtime pay under the NJWHL.

145.  HMH violated, and is violating, the NJWHL by failing to pay Schelhas and the New Jersey Class Members overtime wages (at the proper premium rate based on all renumeration received) for all hours worked in excess of 40 hours in a workweek, including time these employees work during their unpaid "meal breaks." *See* N.J.S.A. 34:11-56a4(b)(1).

146.  Schelhas and the New Jersey Class Members have been harmed as a direct and proximate result of HMH's unlawful conduct because they have been deprived of wages owed for work that they performed and from which HMH derived a direct and substantial benefit.

147.   HMH knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Schelhas and the New Jersey Class Members premium overtime compensation for all overtime hours worked.

148.   HMH's failure to pay Schelhas and the New Jersey Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

149.   Accordingly, Schelhas and the New Jersey Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, liquidated damages in an amount equal to 200% of their unpaid wages, and attorney's fees and costs. *See* N.J.S.A. 34:11-56a25.

### COUNT III
**FAILURE TO PAY ALL WAGES EARNED UNDER THE NJWTA**
**(NEW JERSEY CLASSES)**

150.   Schelhas realleges and incorporates all other paragraphs by reference.

151.   Schelhas brings his NJWTA claims as a class action on behalf of himself and the New Jersey Class Members pursuant to FED. R. CIV. P. 23.

152.   The conduct alleged violates the NJWTA, N.J.S.A. 34:11-4, *et seq*.

153.   At all relevant times, HMH was an "employer" within the meaning of, and subject to the requirements of, the NJWTA. *See* N.J.S.A. 34:11-4.1(a).

154.   At all relevant times, HMH employed Schelhas and the New Jersey Class Members as "employees" within the meaning of the NJWTA. *See* N.J.S.A. 34:11-4.1(b).

155.   The NJWTA requires employers, like HMH, to pay employees, like Schelhas and the New Jersey Class Members, all wages (including overtime wages) earned, due, and owing to them on their regular payday. *See* N.J.S.A. 34:11-4.2.

156.   During the course of their employment, HMH agreed to pay Schelhas and each New Jersey Class Member "wages" – within the meaning of the NJWTA, *see* N.J.S.A. 34:11-4.1(c) – including hourly rates for all hours they worked under and up to 40 hours in a workweek, as well as overtime rates for all hours they worked in excess of 40 hours in a workweek.

157.   Schelhas and each New Jersey Class Member accepted HMH's offer.

158.   But during the course of their employment, HMH failed to pay Schelhas and the New Jersey Class Members all wages earned for all time they worked at the rates HMH agreed to pay them because (1) HMH automatically deducted 30 minutes/shift for meal breaks, and/or (2) HMH failed to include these employees' shift differentials and bonuses in calculating their regular rate of pay for overtime purposes.

159.   As a result of HMH illegal automatic meal break deduction policy and HMH's illegal shift differential and bonus pay scheme, Schelhas and the New Jersey Class Member have been deprived of all "wages" earned, due, and owed to them. *See* N.J.S.A. 34:11-4.1(c).

160.   The wages HMH owes to Schelhas and the New Jersey Class Members remain unpaid.

161.   Schelhas and the New Jersey Class Members have been harmed as a direct and proximate result of HMH's unlawful conduct because they have been deprived of wages owed for work that they performed and from which HMH derived a direct and substantial benefit.

162.   HMH knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Schelhas and the New Jersey Class Members all wages earned (including premium overtime wages) for all hours worked.

163.   HMH's failure to pay Schelhas and the New Jersey Class Members all wages earned at the rates HMH agreed to pay them was neither reasonable, nor was the decision not to pay these employees all wages earned at the rates HMH agreed to pay them made in good faith.

164.   Accordingly, Bennett and the New Jersey Class Members are entitled to recover their unpaid "straight time" and overtime wages, plus liquidated damages

in an amount equal to 200% of their unpaid wages, and attorney's fees and costs. *See* N.J.S.A. 34:11-4.10(c).

## JURY DEMAND

165.   Schelhas demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Schelhas, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Schelhas and his counsel to represent the interests of the FLSA Collectives and New Jersey Classes;

d.    An Order pursuant to Section 16(b) of the FLSA finding HMH liable for unpaid overtime wages due to Schelhas and the FLSA

Collective Members, plus liquidated damages in an amount equal to their unpaid compensation;

e.    An Order finding HMH liable for unpaid overtime wages owed to Schelhas and the New Jersey Class Members under the NJWHL, plus liquidated damages in an amount equal to 200% of their unpaid wages;

f.    An Order finding HMH liable for unpaid "straight time" and overtime wages owed to Schelhas and the New Jersey Class Members under the NJWTA, plus liquidated damages in an amount equal to 200% of their unpaid wages;

g.    Judgment awarding Schelhas and the Putative Class Members all unpaid compensation and other damages available under the FLSA, NJWHL, and NJWTA;

h.    An Order awarding attorney's fees, costs, and expenses;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Dated: May 4, 2023

Respectfully submitted,

*/s/ Camille Fundora Rodriguez*
Camille Fundora Rodriguez
NJ No. 017642011
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
215-875-4635 – Telephone
215-875-4604 – Facsimile
crodriguez@bm.net

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*\*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF & THE PUTATIVE CLASS MEMBERS**