**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ALAN SCHELHAS, individually and for others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HACKENSACK MERIDIAN HEALTH, INC.,<br><br>Defendant. | No. 23-cv-2466<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is plaintiff Alan Schelhas's ("Plaintiff") renewed motion for conditional certification of a collective action and court-authorized notice pursuant to Section 16(b) ("Section 16(b)") of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  ECF No. 112; *see also* ECF No. 112-1 ("Moving Br.").  Defendant Hackensack Meridian Health, Inc. ("HMH") opposed the motion, ECF No. 113 ("Opp'n Br."), and Plaintiff replied, ECF No. 114.  The Court decides the motion without oral argument.  Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons stated below, the Court grants Plaintiff's motion for conditional certification.

## I.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff worked for HMH—a large, integrated health care network in New Jersey—as a patient care technician in the company's Hackensack emergency room from May 2014 to November 2022.  ECF No. 1 ("Compl.") ¶¶ 17, 49, 53–54.  During this time, Plaintiff was an hourly employee covered by the FLSA (*i.e.*, "non-exempt" from the FLSA's requirements).  *Id.* ¶¶ 18, 55.  As a patient care technician, Plaintiff's "primary responsibilities include[d] providing patient care to HMH patients in the emergency room, such as completing patient intakes, checking

vitals, running IV[s], drawing blood for testing, transporting patients between hospital rooms, and assisting doctors and other patient care staff." *Id.* ¶ 54. Relevant here, Plaintiff alleges that HMH subjected him to two unlawful policies during his employment.

First, Plaintiff alleges that HMH deducted 30 minutes a day from his recorded work time even though he routinely worked during those 30-minute increments. *Id.* ¶ 56. In particular, Plaintiff alleges that "HMH subjected [him] to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called 'meal breaks.'" *Id.* ¶ 19. However, Plaintiff claims that he "regularly worked during [his] unpaid 'meal breaks.'"[1] *Id.* ¶ 91. This is because, according to Plaintiff, HMH required him to "remain on-duty and working throughout [his] shifts, continuously subjecting [him] to interruptions, including during [his] unpaid meal periods." *Id.* ¶ 65. As a result, Plaintiff claims that by "performing unpaid work," he was "denied overtime pay [in violation of the FLSA] for those on-duty 'meal breaks' in workweeks in which [he] work[ed] in excess of 40 hours." *Id.* ¶¶ 66, 69–72, 133.

Second, Plaintiff alleges that HMH paid him different hourly rates[2] ("Shift Differentials") and bonuses "depending on what type of shift he worked, but . . . failed to include these Shift Differentials and bonuses in calculating [his] regular rate of pay." *Id.* ¶¶ 57, 77. Plaintiff alleges that this practice violated the FLSA because it "depriv[ed] [him] . . . of overtime compensation at rates not less than 1.5 times [his] regular rate[] of pay—based on *all* renumeration received—for all overtime hours worked." *Id.* ¶ 12. For instance, Plaintiff alleges that by failing to include certain "bonuses [when] calculating" his regular rate of pay, HMH undercalculated his overtime

---

[1] At times, Plaintiff goes further, alleging that he "never received *bona fide* meal breaks." *Id.* ¶ 20.
[2] According to HMH, "[c]ertain HMH employees are eligible for shift differentials when they work during non-standard work hours (*i.e.*, evenings, weekends, or traditional periods of rest)." Opp'n Br. at 16.

rate (*i.e.*, time and a half) and thus paid him less for overtime work than the FLSA required.  *Id.* ¶ 116.

### B.    The Proposed Collective

Plaintiff alleges that these two practices affected him and others similarly situated.  *See, e.g.*, *id.* ¶¶ 44–48, 61–130.  Accordingly, Plaintiff seeks to conditionally certify—and thus "send FLSA notice to"—a collective action consisting of (1) "[a]ll hourly, non-exempt HMH employees who received an automatic meal period deduction at any time during the past 3 years" (the "Proposed Meal Break Collective") and/or (2) "[a]ll hourly, non-exempt HMH employees who received shift differentials and/or bonuses at any time during the past 3 years" (the "Proposed Shift Differential Collective") (together, the "Proposed Collective").  *Id*. ¶¶ 29–30, 80–81; *see also* Moving Br. at 1–2, 24–25.

### C.    Procedural History

Plaintiff filed his complaint on May 4, 2023, and HMH answered on August 31, 2023.  Compl.; ECF No. 32.  On September 18, 2023, Plaintiff filed an initial motion for conditional certification of an FLSA collective action.  ECF No. 41.  Around the same time, however, HMH filed a motion to conduct limited discovery, ECF No. 45, and asked then-Magistrate Judge Edward S. Kiel to "adjourn[], withdraw[], or dismiss[] without prejudice [the initial motion for certification] pending resolution of HMH's" motion to conduct discovery, ECF No. 50.  Plaintiff by letter asked the Court to "reject and deny" HMH's request.  ECF No. 51.  Shortly thereafter, Judge Kiel administratively terminated Plaintiff's initial conditional certification motion without prejudice pending the resolution of HMH's motion to conduct limited discovery.  ECF No. 52.

After the Parties briefed HMH's motion to conduct limited discovery, Judge Kiel granted the discovery motion and directed the Parties to submit a "proposed joint discovery schedule" with an end-date no later than January 16, 2024.  ECF No. 56 at 6.  After the parties completed that

initial discovery, Plaintiff renewed his motion for conditional certification on March 5, 2025.[3] ECF No. 112.

## II.    LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Relevant here, the FLSA requires employers to pay non-exempt employees overtime pay not less than time-and-a-half "the regular rate for all hours worked over 40 in a single workweek," *Greishaw v. Base Mfg.*, No. 06-184, 2008 WL 509077, at *8 (W.D. Pa. Feb. 21, 2008), and defines an employee's regular rate as his "total remuneration . . . (except statutory exclusions) in any workweek [divided] by the total number of hours actually worked by him in that workweek for which such compensation was paid," *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 330 (3d Cir. 2016) (citation omitted).

Section 16(b) of the FLSA authorizes employees to bring a collective action on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). However, "[w]hen a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in [Federal] Rule [of Civil Procedure] 23. Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016); *see also Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239,

---

[3] HMH also filed a motion for partial summary judgment on February 21, 2025. ECF No. 108. On a motion from Plaintiff, ECF No. 110, Magistrate Judge Stacey D. Adams administratively terminated the partial summary judgment motion without prejudice as premature, *see* ECF No. 120.

242–43 (3d Cir. 2013) (noting that to become parties to a collective action, "employees must affirmatively opt-in by filing written consents with the court").

To decide whether a case may proceed as an FLSA collective action, courts in the Third Circuit follow a two-step process.[4] *Halle*, 842 F.3d at 224. At step one, a plaintiff must show that some "similarly situated [employees] do, in fact, exist." *Hagans v. Nat'l Mentor Healthcare, Inc.*, No. 22-128, 2023 WL 2554159, at *2 (D.N.J. Mar. 17, 2023) (citation omitted). To make this showing, "a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012) (citation omitted); *Camesi*, 729 F.3d at 243. In other words, a plaintiff must make a "modest factual showing" as to "(1) an employer policy, (2) that affected the [plaintiff] in a particular way, and (3) that also affected other employees in a similar way." *Hagans*, 2023 WL 2554159, at *3 (quoting *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014)); *see also Alvarez v. BI Inc.*, No. 16-2705, 2018 WL 2288286, at *7 n.5 (E.D. Pa. May 17, 2018) (describing conditional certification as a determination of whether plaintiff has produced "modest evidence of

---

[4] HMH suggests that this two-step process is "'nowhere mandated' and increasingly deemed outdated." Opp'n Br. at 19 n.7 (quoting *Zavala*, 691 F.3d at 536; and citing *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 439–41 (5th Cir. 2021)). HMH is correct that several courts of appeals in recent years have rejected the two-step method to FLSA collective actions and articulated their own approaches to certification. *See, e.g.*, *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 913 (7th Cir. 2025); *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023); *Swales*, 985 F.3d at 434, 441. However, the two-step process is the law of the Third Circuit, *see, e.g.*, *In re Citizens Bank, N.A.*, 15 F.4th 607, 611 (3d Cir. 2021), so the Court must apply it, *Vujosevic v. Rafferty*, 844 F.2d 1023, 1030 n.4 (3d Cir. 1988) ("[A] district court does not have the discretion to disregard controlling precedent."); *see, e.g.*, *Kaynaroglu v. Avis Budget Grp., Inc.*, 773 F. Supp. 3d 169, 187, 187 n.6 (D.N.J. 2025) (rejecting defendant's request to deviate from the Third Circuit's two-step approach to FLSA certification and collecting cases doing the same); *Goldstein v. RTX Corp.*, No. 24-1169, 2025 WL 3754428, at *4 n.8 (D. Del. Dec. 29, 2025) (similar).

a common policy or practice").  Critically, "[c]ourts do not consider the merits of a plaintiff's

claim at the conditional certification stage," because "[d]etermining whether a[n] FLSA violation

has occurred constitutes a merits question to be resolved at a later point in litigation."  *Yang v.

Somchai & Co. Inc.*, No. 19-12742, 2022 WL 131132, at *3 n.2 (D.N.J. Jan. 14, 2022); *see also

Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 681 (D.N.J. 2014).

If the plaintiff can satisfy this "fairly lenient standard" at step one, the court then

conditionally certifies "the collective action for the purpose of facilitating notice to potential opt-

in plaintiffs and conducting pre-trial discovery."  *Yang*, 2022 WL 131132, at *2 (citations omitted);

*see Halle*, 842 F.3d at 224 ("The 'sole consequence' of conditional certification is the

dissemination of court-approved notice to potential collective action members." (quoting *Genesis

Healthcare*, 596 U.S. at 75)).  Then, at step two, a plaintiff must show by a preponderance of the

evidence that each employee who has "opted in to the collective action is in fact similarly situated

to the named plaintiff."  *Camesi*, 729 F.3d at 243 (citation omitted); *Halle*, 842 F.3d at 226.

## III.    DISCUSSION

As noted above, Plaintiff's Proposed Collective consists of two (potentially overlapping)

proposed sub-collectives: (1) the Proposed Meal Break Collective and (2) the Proposed Shift

Differential Collective.  Moving Br. at 24–25.  The Court will therefore evaluate each of these

proposed sub-collectives in turn.  For the reasons stated below, the Court holds that Plaintiff has

met the "fairly lenient [conditional certification] standard" on both and will conditionally certify

the Proposed Collective.  *Camesi*, 729 F.3d at 243 (citation omitted).

### A.    The Proposed Meal Break Collective

Plaintiff defines the Proposed Meal Break Collective as "[a]ll hourly, non-exempt HMH

employees who received an automatic meal period deduction at any time during the past 3 years."

Compl. ¶ 29; *see* Moving Br. at 24–25.  As discussed below, the Court finds that conditional certification of this collective is appropriate.

**1.    The Automatic Deduction Policy and How It Affected Plaintiff**

Plaintiff argues that HMH maintains a policy of "automatically deduct[ing] 30 minutes" from his "recorded work time to account for an unpaid meal period."  Moving Br. at 6.  In support of this, Plaintiff submits HMH policies for "[r]ecording [h]ours and [m]eals" and "[w]ork [b]reaks [a]nd [m]eals."  ECF Nos. 112-4, 112-5.  Read in conjunction, these policies state that "[t]eam members are not required to record their time for meal breaks," because "[t]here may be one scheduled [unpaid] meal break [for a minimum of 30 minutes] in each shift of eight (8) hours or more."  ECF No. 112-4 at 2; ECF No. 112-5 at 2; *see also* ECF No. 112-9 ("Schelhas Dep.") at 53:23–54:1 ("Q. Well, you wouldn't tell them you got a lunch break; right? Because it was getting deducted out? There would be no point to that. A. Right."); ECF No. 112-8 ("Schelhas Decl.") ¶ 6 ("[HMH] has an unpaid meal period policy for all hourly workers of automatically deducting 30 minutes to account for an unpaid meal break.").

Plaintiff argues that the automatic deduction policy improperly reduced his overtime pay. In particular, Plaintiff submits that as a patient care worker, his meal breaks were routinely interrupted by "question[s] from other patient care staff or . . . cut short due to . . . being called back onto the floor before [his] meal period concluded."  Moving Br. at 6; *see, e.g.*, Schelhas Dep. at 42:2–44:24; Schelhas Decl. ¶ 7 ("For patient care workers like me, meal periods were subject to interruptions at all times and were virtually always less than 30 full minutes.").  For instance, Plaintiff states that "[o]ften [his] meal breaks were less than 10 full minutes, and even then they were frequently interrupted by patient care demands," *e.g.*, "emergencies," "assisting patients with personal hygiene, dressing, assisting with trauma, running tests such as EKGs and drawing blood, cleaning patients' rooms, and assisting nurses and doctors with patient care."  Schelhas Decl. ¶¶

3, 7; *see also, e.g.*, Schelhas Dep. at 42:2–44:24.  Plaintiff claims that the "30-minute deductions were automatically applied even" when his meal breaks were interrupted.  Moving Br. at 6; *see* Schelhas Decl. ¶ 7 ("Throughout my time working for [HMH], my meal periods were virtually always subject to interruption and almost always missed or actually interrupted during my weekly shifts."); Schelhas Dep. at 44:13–21 ("A. Well, we weren't getting a lunch break . . . . Q. What's your definition of a lunch break? A. Sitting down for 30 minutes without being bothered, without listening to the beeps, the sounds, the yelling, the screaming, get me a warm blanket, can I get some water, and, by the way, Room 2 is in cardiac arrest.").

Plaintiff concedes that HMH's written policy "explicitly permits employees . . . to be interrupted in 'cases of emergency.'"  Moving Br. at 7; *see also* Opp'n Br. at 4, 6.  Indeed, Plaintiff states that this expectation was entirely consistent with his "ethical responsibility to care for [his] patients" and his "duty of care" as a patient care worker.  Moving Br. at 8–9.  He also acknowledges that the policy "strongly encourage[s] [employees] to leave their workstations for meal breaks to avoid interruptions."  ECF No. 112-5 at 3.  Plaintiff further acknowledges that, on paper, HMH allowed employees to request a reversal of all or part of the 30-minute automatic deduction if their meal break was interrupted. *See* Moving Br. at 10–12.  However, Plaintiff argues that the automatic deduction policy nonetheless led to under compensation for several reasons.

First, Plaintiff argues that leaving the floor is inconsistent with patient care work.  *See, e.g.*, *id.* at 7 (quoting Schelhas Dep. at 42:2–44:24 ("A. You have to stay on the floor. You can't leave the floor. Q. Why can't you leave the floor? A. Would you leave your mother half-dying and have a tech leave for lunch?")); Schelhas Decl. ¶ 13 ("As a matter of practical reality, patient care workers like me have to be ready to intervene and help at all times during our shifts.").

Second, Plaintiff argues that "HMH also had a common practice of failing to properly educate or inform healthcare workers like [him] of the circumstances for which they could or should be compensated during their unpaid breaks." Moving Br. at 10–11. Specifically, Plaintiff argues that HMH failed to inform employees of their ability to request automatic deduction reversals and failed to specify that employees could seek *partial* reversals if they missed part of their meal break. *See id.* at 11; *id.* at 14 ("Instead, if at all, HMH informs Schelhas and Meal Break Collective Members they are only eligible for compensation if their meal period is skipped entirely."). To support this, Plaintiff cites his own declaration and deposition testimony, including his testimony that he never received training on and had never seen the meal break policy. *See* Schelhas Decl. ¶¶ 9, 11 ("[HMH] did not provide any training to hourly workers like me informing us that we could report a missed meal break when we tried to take a meal break but were interrupted . . . ."); Schelhas Dep. at 82:2–83:23. He also cites the deposition testimony of Kathryn Luciani, HMH's director of labor relations, who stated that the policy "is not handed to the team members [during orientation]; it is referenced during orientation, and team members are instructed to access" HMH's intranet for more information. ECF No. 112-10 at 42:11–45:13, *see also id.* at 102:8–17, 145:2–13.

Third, Plaintiffs argues that HMH "discouraged [him] from reporting missed or interrupted unpaid breaks because HMH's supervisory employees consistently disregard other work-related complaints, implemented other rules which threatened workers with discipline if they reported missed breaks, and generally led workers to understand their complaints would be fruitless or that they would be viewed in a negative light by management if they requested payment." Moving Br. at 12. To support this, Plaintiff cites his own declaration where he states that "my supervisors left me with the impression that reporting missed breaks would have been fruitless," because "[e]ven

9

if [he] sent that 'I didn't get a break' message to [his] supervisor, there was no guarantee that [he] would be paid for those meal breaks" and doing so "would make [him] look bad to [his] supervisors." Schelhas Decl. ¶¶ 9, 10. He also points to his deposition testimony where he stated that his supervisors discouraged him from seeking a reversal of the automatic meal break deduction. Schelhas Dep. at 109:22–110:7 ("You know, you would say, Oh, I didn't get a break today, to your supervisor. And they would say, Well, neither did anyone else. So that would pretty much discourage you."). On this point, Plaintiff also argues that HMH's actual protocol for reversing automatic deductions is unreasonable. He notes that an employee must "submit a handwritten letter, an email, or written slip to [his] supervisor each and every time [he] want[ed] to be paid for their on-duty meal periods" and that, in practice, these "reversal requests . . . would invite negative reactions from supervisory employees." Moving Br. at 13–14.

HMH does not dispute that it maintains the automatic deduction policy. Instead, it makes two primary arguments in response to Plaintiff's account of the automatic deduction policy. First, HMH argues that this policy "is not unlawful" and therefore "cannot serve as the common policy underlying conditional certification." Opp'n Br. at 1; *see also id.* at 23–24. Specifically, HMH claims that the policy is "plainly lawful on [its] face and [does] not suggest that non-exempt employees were treated similarly in a way that would violate the FLSA i[f] proved." *Id.* at 24. Second, HMH argues that "Plaintiff has no evidence of even a single occasion where his leader(s) . . . instructed him to work through meals, observed him working through a meal period, or ignored requests for time adjustments." *Id.* at 24. Furthermore, it argues that his claims are undermined by his "admission that he requested and received payroll adjustments for [some] missed meals." *Id.* at 26. While these arguments are acknowledged, they "invite the Court to delve into the merits of Plaintiff's claims," which is "improper at this stage." *Craig v. Rite Aid*

10

*Corp.*, No. 08-2317, 2009 WL 4723286, at *3 (M.D. Pa. Dec. 9, 2009). Therefore, the Court will consider whether Plaintiff has made the requisite showing that the automatic deduction policy affected others in a similar way.

### 2. Whether the Automatic Deduction Policy Impacts Other Employees in a Similar Manner

In addition to Ms. Luciani's testimony about the widespread application of the automatic deduction policy, Plaintiff relies on declarations to show that others are similarly situated. Plaintiff submits declarations from three other HMH patient care workers who experienced the automatic deduction policy in a similar manner to Plaintiff. Specifically, Plaintiff submits declarations from (1) Jacqueline Bogdan, who worked as a "non-exempt patient observer . . . from approximately November 2022 to April 2023 at [HMH's] Southern Ocean Medical Center," ECF No. 112-11 ("Bogdan Decl.") ¶ 3; (2) Victoria Smith, who was a "certified medical assistant (CMA) [for HMH in Jackson, New Jersey,] from approximately February 2015 to September 2022," ECF No. 112-12 ("Smith Decl.") ¶ 3; and (3) Alicia Tisdale Turner, who was "an emergency room technician . . . from approximately March 2011 to November 2021 at the HMH Palisades Medical Center," ECF No. 112-13 ("Turner Decl.") ¶ 3. Bogdan, Smith, and Turner—all of whom were patient care workers at HMH and have opted into the Proposed Collective[5]—state that HMH automatically deducted 30 minutes to account for their unpaid meal breaks, even though their meal breaks were sometimes interrupted by other staff, patients, patient family members, or an emergency situation. Bogdan Decl. ¶¶ 6–7; Smith Decl. ¶¶ 6–7; Turner Decl. ¶¶ 6–7. They further state that HMH did not sufficiently train or educate them on seeking reversals of the automatic deduction and that they were discouraged from seeking such reversals by their supervisors.

---

[5] In addition to Bogdan, Smith, and Turner, twelve others have opted in. *See* ECF Nos. 3, 4, 6, 28, 29, 30, 31, 40, 48, 59, 65, 86; *see also* Moving Br. at 4, 4 n.6.

11

Bogdan Decl. ¶¶ 9–11; Smith Decl. ¶¶ 8–9; Turner Decl. ¶¶ 9–11.  As a result, they state that they were not adequately compensated for interrupted or missed meal breaks.  *See* Bogdan Decl. ¶¶ 10–11; Smith Decl. ¶¶ 11–13; Turner Decl. ¶¶ 9–11.  Plaintiff, Bogdan, and Turner's declarations further state that others also experienced interrupted or missed meal breaks.  In particular, their declarations state that "[m]issed or interrupted breaks were . . . a frequent topic of conversation" among staff members.  Schelhas Decl. ¶ 8; Bogdan Decl. ¶ 8; Turner Decl. ¶ 8.

This evidence goes beyond "pure speculation" and satisfies Plaintiff's "fairly lenient" burden.  *Zavala*, 691 F.3d at 535, 536 n.4 (citations omitted); *see, e.g.*, *Gray v. Vesta Mine Servs., Inc.*, No. 24-1069, 2025 WL 2097602, at *3–4 (W.D. Pa. July 26, 2025); *Gravely v. PetroChoice, LLC*, No. 19-5409, 2021 WL 765755, at *5 (E.D. Pa. Feb. 26, 2021); *Gauzza v. Prospect Med. Holdings, Inc.*, No. 17-3599, 2018 WL 5452746, at *2–3 (E.D. Pa. Oct. 26, 2018); *Galt v. Eagleville Hosp.*, 238 F. Supp. 3d 733, 737 (E.D. Pa. 2017); *Jones v. SCO, Silver Care Operations LLC*, No. 13-7910, 2015 WL 5567355, at *5 (D.N.J. Sept. 22, 2015); *Potoski v. Wyo. Valley Health Care Sys.*, No. 11-582, 2013 WL 6731035, at *2, *8 (M.D. Pa. Dec. 19, 2013); *Holley v. Erickson Living*, No. 11-2444, 2012 WL 1835738, at *5–6 (E.D. Pa. May 21, 2012); *Taylor v. Pittsburgh Mercy Health Sys., Inc.*, No. 09-377, 2009 WL 2003354, at *1–2 (W.D. Pa. July 7, 2009); *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 09-379, 2009 WL 1515175, at *5 (W.D. Pa. June 1, 2009); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85, 2009 WL 1361265, at *4–5 (W.D. Pa. May 14, 2009).

HMH makes several arguments in response, none of which are sufficient to prevent conditional certification of the Proposed Meal Break Collective.  First, HMH argues that Plaintiff, Turner, and Smith's personal experiences undermine Plaintiff's claim that HMH supervisors ignored, discouraged, or were otherwise hostile to other employees' automatic deduction reversal

12

requests.  *E.g.*, Opp'n Br. at 26 (noting "Plaintiff's admission that he requested and received payroll adjustments for [some] missed meals").  This response speaks to how often Plaintiff and HMH employees were able to reverse automatic meal break deductions, not whether there are HMH employees "similarly situated" to Plaintiff.  *Hagans*, 2023 WL 2554159, at *2.  Moreover, this argument again "invite[s] the Court to delve into the merits of Plaintiff's claims," which is "improper at this stage."  *Craig*, 2009 WL 4723286, at *3.

Second, HMH argues that Plaintiff is not entitled to conditional certification because neither he, Bogdan, Smith, nor Turner have "personal knowledge of how meal periods and deductions were handled in other HMH facilities."  *Id.* at 27.  Although relevant, *see Petkovic v. Bloomberg L.P.*, No. 19-9471, 2023 WL 2263898, at *3 (D.N.J. Feb. 28, 2023) ("Plaintiffs cannot rely on affidavits or declarations that make 'blanket assertions' or offer information of which they have no personal knowledge." (citation omitted)), this argument does not negate Plaintiff's showing.  Plaintiff's primary evidence includes three "declarations from . . . opt-in plaintiffs to support his allegations" that the automatic deduction policy affected them in a similar manner. *Davey v. Joy Cone Co.*, No. 24-1246, 2025 WL 2430264, at *7 (W.D. Pa. Aug. 22, 2025).  These declarations, which speak to each declarant's *personal* experience, are sufficient to satisfy Plaintiff's modest burden that other employees experienced the automatic deduction policy in a similar manner to him.  *See, e.g.*, *Williams v. Owens & Minor, Inc.*, No. 09-742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) ("Plaintiffs have provided sufficient evidence of similarly situated employees to satisfy the 'modest factual showing' standard for conditional certification. Specifically, Williams and the two opt-in plaintiffs state in sworn declarations and deposition testimony that they frequently worked through meal breaks and were not paid.").

Third, HMH argues that Bogdan, Smith, and Turner are not similarly situated to Plaintiff.[6]
*See* Opp'n Br. at 28–39.  For example, HMH argues that Plaintiff, Bogdan, Smith, and Turner
worked at "different . . . locations," "in a variety of departments and divisions," and were impacted
by the automatic deduction policy to differing degrees.  *Id.* at 30, 35.  These arguments, and the
evidence HMH submits to support them, "do[] not provide a basis to deny conditional
certification."  *Galt*, 238 F. Supp. 3d at 737.  If anything, they are "more appropriately reviewed
pursuant to [a final certification motion] or a motion for summary judgment after more discovery
has been completed."  *Id.* (citation omitted); *see Hamid*, 2020 WL 7384882, at *2 ("The Court
should defer questions about whether individualized determinations will predominate and render
the case unsuitable for collective action to the second step of the certification process."); *Ying
Yang*, 2019 WL 1275059, at *3 ("Even where putative [collective] members 'differ in job

---

[6] HMH also points out that Turner—who testified that she was stationed at one of HMH's labs
"for [roughly] two years" between 2017 and 2018 but otherwise worked in the ER, ECF No. 113-
1, Exhibit 1, at 15:17–17:5—"admit[ed] that she [1] consistently received an uninterrupted meal
period of 45 minutes during the time she worked [in the lab,] [2] has no claim relating to meal
deductions during that time[, and] [3] typically received a full meal period when she worked [in
the ER], citing only infrequent interruptions, and never by patients as alleged in the Complaint,"
Opp'n Br. at 27.  The first two points, which deal with Turner's experience working in a lab, do
not undermine the evidence related to Turner's time in the ER.  And as for the third point, Turner
testified that her meal breaks at the ER were interrupted roughly "three times [per] month" from
around 2018 to the COVID-19 pandemic and then more often during the pandemic.  ECF No. 113-
1, Exhibit 1, at 63:6–14.  This testimony is entirely consistent with Plaintiff's testimony.  *See, e.g.*,
Schelhas Dep. at 42:2–44:24 ("Q. And when you would take a meal break—I assume you'd get
meal breaks every once in while?  A. Yeah. Few and far between.");  *see Clark v. Intelenet Am.,
LLC*, No. 18-14052, 2020 WL 831127, at *4 n.4 (D.N.J. Feb. 19, 2020) ("Plaintiffs need only
show that they are similarly, not identically, situated.").  Additionally, even if Turner's
interruptions were not due to *direct* patient requests, that would not mean that Turner and Plaintiff
are not similarly situated for purposes of having "a common [FLSA] claim" based on meal break
interruptions.  *Ying Yang v. Vill. Super Mkt., Inc.*, No. 18-10486, 2019 WL 1275059, at *3 (D.N.J.
Mar. 20, 2019) (citation omitted); *see also Hamid v. Chester Cnty. Hosp.*, No. 19-3773, 2020 WL
7384882, at *2 (E.D. Pa. Dec. 16, 2020) ("The Court should defer questions about whether
individualized determinations will predominate and render the case unsuitable for collective action
to the second step of the certification process.").

14

responsibilities, hours worked, and other details of employment, these differences do not undermine Plaintiffs' showing that they share a common claim that Defendants violated the FLSA.'" (citation omitted)); *Potoski*, 2013 WL 6731035, at *7–8 (granting conditional certification of an FLSA collective despite "some factual differences between Plaintiffs" and the proposed collective).

As such, the Court will conditionally certify the Proposed Meal Break Collective.

**B.    The Proposed Shift Differential Collective**

Plaintiff defines the Proposed Shift Differential Collective as "[a]ll hourly, non-exempt HMH employees who received shift differentials and/or bonuses at any time during the past 3 years."  Compl. ¶ 29; *see* Moving Br. at 24–25.  As explained below, the Court will conditionally certify this collective.

**1.   The Shift Differential Policy and How It Affected Plaintiff**

Plaintiff and HMH stipulate that HMH has used the same payroll system and underlying formulas for calculating the regular rate of its non-exempt, hourly employees since May 4, 2020. *See* ECF No. 112-3.  Plaintiff argues that this system failed to "incorporate shift differential pay, COVID hazard pay, non-discretionary bonuses, and other compensation paid to" him "appropriately in [his] regular rate[] when calculating [his] overtime rate[]."  Moving Br. at 15.  In support, Plaintiff submitted his own declaration stating just that, except that he does not mention hazard pay.  Schelhas Decl. ¶ 15 ("The pay records that [HMH] gives me and other hourly workers like me do not appear to include shift differential pay, non-discretionary bonuses, and other compensation paid into our overtime rate calculation.").  Plaintiff also did not reference hazard pay in his complaint.  *See generally* Compl.

In response, HMH argues that "Plaintiff could not explain the allegation in his own declaration that HMH failed to include 'other compensation' in his regular rate to calculate

15

overtime and testified that he just signed the declaration that his counsel prepared for him." Opp'n Br. at 38 (quoting Schelhas Decl. ¶ 15). These arguments go to Plaintiff's credibility, which the Court cannot evaluate on a motion for conditional certification of an FLSA action. *See Tidwell v. YWCA of Greater Harrisburg*, No. 22-908, 2024 WL 1861525, at \*1 n.2 (M.D. Pa. Apr. 29, 2024); *Jun Yin v. Hanami Westwood, Inc.*, No. 14-809, 2017 WL 3288607, at \*2 (D.N.J. Aug. 1, 2017). Therefore, the Court will consider whether Plaintiff has made the requisite showing that the payroll calculation policy affected others in a similar way.

### 2. Whether the Shift Differential Policy Impacts Other Employees in a Similar Manner

To show that there are similarly situated employees, Plaintiff relies on his own declaration, as well as Bogdan and Turner's. *See* Moving Br. at 14–16. In his own declaration, Plaintiff states that the payroll system affects other hourly workers like him in a similar way. Schelhas Decl. ¶ 15. In addition, both Bogdan and Turner's declarations recite statements consistent with Plaintiff's declaration, *i.e.*, that (1) their paychecks did not reflect shift differentials or bonuses and (2) that the same is true of other hourly workers. *See* Bogdan Decl. ¶¶ 14–15; Turner Decl. ¶¶ 15–16. This evidence goes beyond "pure speculation" and satisfies Plaintiff's "fairly lenient" burden. *Zavala*, 691 F.3d at 535, 536 n.4 (citations omitted); *see, e.g.*, *Bruno v. Wells Fargo Bank N.A.*, No. 19-587, 2021 WL 964938, at \*3–5 (W.D. Pa. Mar. 15, 2021); *Jones*, 2015 WL 5567355, at \*5; *Hamid*, 2020 WL 7384882, at \*2; *Meals v. Keane Frac GP, LLC*, No. 16-1674, 2017 WL 2445199, at \*4–5 (W.D. Pa. June 6, 2017). However, HMH correctly notes that the term "hazard pay" only appears in Plaintiff's briefing and Turner's declaration. Opp'n Br. at 16, 38 n.12; *see also, e.g.*, Moving Br. at 15, 25. Because "[i]t well-settled that 'a plaintiff may not amend the complaint through arguments in a brief,'" the Court will exclude "hazard pay" from its conditional grant of collective action certification as to the Proposed Shift Differential Collective. *D'Amelio*

16

*v. Indep. Healthcom Strategies Grp., Inc.*, No. 16-3055, 2016 WL 6909102, at *2 (D.N.J. Nov. 22, 2016) (quoting *Cheeseman v. Baxter Healthcare Corp.*, No. 08-4814, 2009 WL 1351676, at *4 (D.N.J. May 13, 2009)).

HMH also makes two arguments in response to Plaintiff's evidence. First, HMH points out that Turner "testified that she does not even believe that HMH owes her compensation relating to shift differentials or bonuses." Opp'n Br. at 38; *see* ECF No. 113-1, Exhibit 1, at 141:25–142:19. This undeniably undermines Plaintiff's initial showing that he and Turner are similarly situated. *Reed v. Empire Auto Parts, Inc.*, No. 13-5220, 2015 WL 761894, at *3 (D.N.J. Feb. 23, 2015) (noting that a court considering an FLSA conditional certification motion should review a plaintiff's evidence "in light of the evidence submitted by" defendant (citation omitted)); *see Zavala*, 691 F.3d at 537 (noting that "whether they advance similar claims" is relevant to the similarly situated analysis). Nonetheless, this does not undercut (1) the parties' stipulation that all employees are subject to the same payroll system and wage calculation policy or (2) that Plaintiff and Bogdan are similarly situated. *See Ying Yang*, 2019 WL 1275059, at *2 (granting conditional certification based on declarations from plaintiff and one opt-in).

Second, HMH also claims that "notice would be improper and futile," because "HMH actually includes *all* shift differentials and non-discretionary bonuses in the regular rate of pay . . . through the payroll system." Opp'n Br. at 38–39. To support this argument, HMH submits a declaration from Lorraine Malfitano, its vice president of payroll operations. *See* ECF No. 113-3 ¶ 3. Once again, this argument "invite[s] the Court to delve into the merits of Plaintiff's claims," which is "improper at this stage." *Craig,* 2009 WL 4723286, at *3.

As such, the Court will conditionally certify the Proposed Shift Differential Collective, with the exception related to hazard pay noted above.

17

IV.    **CONCLUSION**

Accordingly, for the reasons stated above, **IT IS** on this 31st day of March 2026;

**ORDERED** that Plaintiff's motion for conditional certification of a collective action (ECF No. 112) as defined in the complaint (ECF No. 1) is **GRANTED**; and it is further

**ORDERED** that consistent with this Opinion and Order, the Court's grant of conditional certification of the Proposed Collective does not extend to "hazard pay"; and it is further

**ORDERED** that the parties shall meet and confer on the proposed notice and opt-in procedures for potential opt-in plaintiffs; and it is finally

**ORDERED** that after the parties meet and confer, they shall file a joint submission regarding notice and opt-in procedures within forty-five (45) days of this Opinion and Order.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

18